NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELIZABETH FAZIO and ANTHONY FAZIO, her husband,<br><br>Plaintiffs,<br><br>v.<br><br>J.C. PENNEY CORPORATION, INC., et al.,<br><br>Defendants. | Civil Action No.: 08-1539 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendant J.C. Penney Corporation's ("J.C. Penney" or "Defendant")'s: 1) Motion to Compel Plaintiffs to Sign the Release and Settlement of Claim or Forfeit the Settlement Amount [Docket Entry No. 41]; and 2) Motion for Attorneys' Fees pursuant to Fed R. Civ. P. 11 [Docket Entry No. 42]. The Court has considered the submissions made in connection with both motions. No oral argument was heard pursuant to Fed. R. Civ. P. 78. Based on the reasons that follow, Defendant's Motion to Compel is **GRANTED** in part and **DENIED** in part, and Defendant's Motion for Attorneys' Fees is **DENIED**.

**I. BACKGROUND**

Plaintiffs, currently proceeding pro se, commenced their action against Defendant J.C. Penney and other unnamed defendants on October 10, 2007 in the Superior Court of New Jersey, Passaic County, alleging negligence and loss of consortium. Plaintiffs'

action was based on an incident which occurred on or about October 14, 2005, when Plaintiff Elizabeth Fazio ("Ms. Fazio") claims she "struck her right leg on a shoe display case [at a J.C. Penney Store in Wayne, New Jersey] causing her to fall and sustain injuries." (Oct. 2, 2009 Order, ¶ 1). Defendant J.C. Penney removed the action to this Court on March 27, 2008, and the matter was referred to arbitration. [See Docket Entry No. 1]. On February 3, 2009, the Arbitrator issued his Arbitration Award, and the following day, J.C. Penney made an offer of settlement to Plaintiffs for the amount of the Arbitration Award. (Oct. 2, 2009 Order, ¶ 2). After discussions occurred between Plaintiffs and their attorney, Plaintiffs' attorney informed J.C. Penney's attorney that the Plaintiffs had agreed to accept the settlement offer on March 3, 2009. (Id., ¶ 3). On March 3, 2009, Magistrate Judge Falk held a telephone status conference at which both attorneys informed Judge Falk that the case had been settled. (Id.). J.C. Penney's attorney then sent Plaintiffs' attorney a settlement confirmation letter and a release to be signed by Ms. Fazio. (Id.). On March 9, 2009, this Court issued an Order dismissing this matter based on the above-cited representations that the matter had been settled, but retained jurisdiction over the agreement to enforce its terms. [Docket Entry No. 12].

However, Ms. Fazio did not sign the release, and on or about April 14, 2009, she called her attorney and requested a mutual confidentiality agreement and assurance that J.C. Penney would pay future medical benefits related to her knee injury. (Id., ¶ 4). On April 23, 2009, Plaintiffs' attorney forwarded this request to J.C. Penney, but J.C. Penney did not agree to the request on the basis that the matter had already been settled. (Id.). Defendant J.C. Penney then filed a motion to enforce the settlement on June 11, 2009.

2

[Docket Entry No. 14]. On that same date, the Court received a letter from Ms. Fazio stating that she had never authorized her attorney to settle the case.

To ascertain the factual circumstances regarding the Plaintiffs' alleged authorization of the settlement, the Court heard oral argument on the motion to enforce the settlement on September 25, 2009. At the hearing, this Court heard testimony from J.C. Penney's attorney, Diana M. Hendry, Plaintiffs' attorney, Robert C. Papa, Jr., Ms. Fazio, Mr. Fazio, and Ms. Fazio's daughter regarding the nature and scope of Plaintiffs' authorization of the settlement with Defendant J.C. Penney [Docket Entry Nos. 23, 31]. On the basis of the submissions of the Parties and the testimony on record at that hearing, this Court issued a written decision finding that "the testimony and evidence indicates that, although Ms. Fazio may have hoped for a larger settlement, she nevertheless authorized her attorney to accept J.C. Penney's offer on March 3 and primarily took issue with how the settlement proceeds would be distributed. Therefore, the Court grants J.C. Penney's motion to enforce the settlement agreement." (Oct. 2, 2009 Order, ¶ 8). The Court denied J.C. Penney's motion for attorney's fees and costs. (Id., ¶ 9).

On November 2, 2009, Plaintiffs appealed this Court's Order granting Defendant's motion to enforce the settlement to the Third Circuit Court of Appeals. [Docket Entry No. 25]. On July 21, 2010, the Third Circuit affirmed this Court's October 2, 2009 Order, finding that the view of the evidence presented therein was plausible in light of the entire record. (3d Cir. Op., at 2). Upon reviewing the evidentiary record regarding Plaintiffs' authorization of the settlement, the Third Circuit made a series of findings, including: 1) it was a permissible view of the evidence for this Court to interpret Ms. Fazio's March 17, 2009 letter to her attorney as support for a finding that Plaintiffs

3

authorized the settlement; 2) this Court did not shift the burden of proof on Plaintiffs to demonstrate that they had not authorized the settlement; 3) other evidence on the record supported this Court's conclusion that Plaintiffs were unhappy with the settlement but had authorized it; 4) Plaintiffs had not shown that they were prevented from presenting testimony material to the issue of whether they authorized the settlement agreement; and 5) Plaintiffs had not shown that it was a conflict of interest for their counsel to represent them at the September 25th hearing and did not explain how they were prejudiced by their counsel's testimony at said hearing. (3d Cir. Op., at 3-6).

Following the Third Circuit's decision affirming this Court's ruling, counsel for Defendant sent Plaintiffs four letters seeking their signature on the Release. (Def. Mot. to Compel, Ex. G, at ¶ 19). Plaintiffs did not sign the Release, and on October 27, 2011, Defendant filed the instant motion requesting that the Court compel Plaintiffs to sign the Release and Settlement of Claim or forfeit the settlement amount. [Docket Entry No. 41]. Defendant requests that, if Plaintiffs sign the Release, Defendant should first pay the Medicare lien prior to making any payment to the Plaintiffs. (Def. Br., at 1). If, however, Plaintiffs fail to timely sign the release, Defendant requests that the settlement amount be forfeited and retained by Defendant J.C. Penney, with no payment made to the Medicare lien. (Id.). Defendant also requests attorneys' fees and costs pursuant to Fed. R. Civ. P. 11.

## II. DISCUSSION

### A. Defendant's Motion to Compel Plaintiffs to Sign the Release and Settlement of Claim or Forfeit the Settlement Proceeds

Defendant argues that, pursuant to the strong public policy favoring settlements, which is based in part on the finality such settlements bring to the parties, this Court

4

should order Plaintiffs to execute release documents or forfeit the settlement amount. (Def. Br., at 5). Defendant also requests an order from this Court requiring Defendant to first ascertain Ms. Fazio's Medicare lien and pay it prior to issuing any settlement payment to Plaintiffs. (Id., at 6). Defendant claims that a "hold harmless" clause in a release is "insufficient protection for the insurer with regard to payment of the Medicare lien," since: 1) according to the Medicare Medicaid and SCHIP Extension Act of 2007, an insurance company has a separate duty to protect the interests of Medicare and may be assessed daily fines if the lien is not paid out of the settlement proceeds; and 2) it does not guarantee that Plaintiffs' counsel or Plaintiffs themselves will pay these fines, which would necessitate further litigation and time expended on this matter. (Id.). Plaintiffs argue that the Court should not compel them to sign the settlement because: 1) they did not authorize the settlement; and 2) they were not afforded due process at the September 25, 2009 hearing at which Plaintiffs' counsel acted as a witness against them. (Pls. Opp'n Br., at 2). Plaintiffs do not address Defendant's request to first pay the Medicare lien prior to issuing any settlement payment to Plaintiffs.

 This Court has given considerable attention to ascertaining the nature of Plaintiffs' authorization of the settlement in its September 25, 2009 hearing and its review of the Parties submissions. The evidence presented in Plaintiffs' Opposition Brief purporting to demonstrate inconsistencies in the nature and extent of Plaintiffs' authorization of the settlement has already been considered by this Court in its determination that while "[t]he Court believes Mrs. Fazio's testimony that she was unhappy with the settlement[,] . . . being unhappy with what is offered is not the same thing as rejecting the offer." (Oct. 2, 2009 Order, at ¶ 8). Upon its thorough review of

the record, including the transcript of this Court's September 25, 2009 hearing, the Third Circuit's affirmed this Court's order granting Defendant's motion to enforce the settlement, finding plausible this Court's view of the evidence in light of the entire record. (3d Cir. Op., at 1-2). Given the strong public policy favoring settlement,[1] the extensive assessment on the record of Plaintiffs' authorization of said settlement with J.C. Penney, this Court's approval of that settlement and the Third Circuit's affirmance of this Court's order granting Defendant's motion to enforce the settlement, the Court sees no alternative but to grant Defendant's motion to compel Plaintiffs to sign the release and settlement of claim or forfeit the settlement proceeds.

Defendant's request to first pay the Medicare lien associated with Plaintiffs' alleged injury prior to issuing settlement payments to Plaintiffs cannot be granted on the basis of the record before this Court. The "Release and Settlement of Claim" makes no explicit reference to allocation of settlement funds regarding any payment of the Medicare lien, although it provide that "the Undersigned agree to indemnify and save harmless the Released Parties from and against any and all further claims for damages, costs and expenses arising out of or in any way relating to the above-referenced incident." (Def. Mot. to Compel, Affidavit of Diana M. Hendry ("Hendry Aff."), "Release and Settlement of Claim," Ex. B, at ¶ 2). Medicare's recovery is restricted where the Medicare beneficiary receives payment from a third party as a result of a settlement under 42 C.F.R. § 411.37. Specifically, Medicare's recovery is limited when the conditional Medicare payments that the beneficiary received are less than the amount obtained as a result of a settlement from a liable tortfeasor or its insurer. 42 C.F.R. §

---

[1] See, e.g. Zuccarelli v. Department of Environmental Protection, 326 N.J. Super. 372, 380 (App. Div. 1999); Pascarella v. Bruck, 462 A.2d 186, 189 (N.J. Super. Ct. App. Div. 1983).

6

411.37(c). In that case, Medicare's right of recovery is limited by a proportional share of the beneficiary's procurement cost in obtaining the settlement from the liable tortfeasor. Therefore, when a Medicare beneficiary reaches a settlement with a liable tortfeasor that exceeds the sum of the conditional Medicare payments received, Medicare's recovery from the beneficiary is computed to be the Medicare payment amount, minus a share of the procurement cost associated with the settlement, and Medicare is subrogated only to that amount that it paid the beneficiary, minus its share of the procurement cost as computed under 42 C.F.R. § 411.37(c). The Court understands Defendant's concern regarding liability should Plaintiff default on any Medicare lien payments, but without a proper finding on the record of the conditional Medicare payments received by Plaintiffs, including the relevant procurement costs and the amount of collateral source benefits, if any, for which a right of subrogation exists, it would be improper for the Court to direct payment to any Medicare lien prior to issuing settlement payments to the Plaintiffs. Accordingly, Defendant's request to first pay the Medicare lien prior to issuing any settlement payments to Plaintiffs is denied without prejudice. However, should Plaintiffs sign the Release and Settlement of Claim, Defendant may ascertain the amount of the Medicare lien with regard to this case and refile a request to this Court to approve payment of said lien prior to issuing any additional settlement payments to Plaintiffs. Defendant shall include in that request a proposed allocation of settlement funds detailing: the amount of said Medicare lien, the amount of any deductions or subrogations relevant to any Medicare payments made from a settlement amount in accordance with federal statutory requirements and appropriate regulations administering Medicare

services, and the amount, if any, remaining for settlement payments to be issued directly to Plaintiffs.

B.  Defendant's Motion for Attorney's Fees Pursuant to Fed. R. Civ. P. 11

Defendant argues that Plaintiffs should be ordered, pursuant to Fed. R. Civ. P. 11, to pay attorneys' fees to compensate J.C. Penney "for all of the time and expense that has been expended due to [P]laintiffs' intransigence and unreasonable refusal to sign the settlement documents." (Def. Br., at 1). Plaintiffs do not address Defendant's request for attorneys' fees in their Opposition filing.

Rule 11 provides that every pleading, motion and other paper must be signed by a party personally if the party is unrepresented, and that in so signing, the party "certifies to the best of the persons' knowledge, information and belief, formed after an inquiry reasonable under the circumstances, it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11. Rule 11 sanctions are warranted "only in the 'exceptional circumstances' where a claim or motion is patently unmeritorious or frivolous." Watson v. City of Salem, 934 F. Supp. 643, 662 (D.N.J. 1995)(citing Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988)). Sanctions are imposed only in those rare instances where the frivolousness of a claim or motion amounts to an "abuse[] of the legal system." Doering, 857 F.2d at 194. The legal standard to be applied when evaluating the conduct allegedly violative of Rule 11 is "reasonableness under the circumstances." Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277, 289 (3d

8

Cir. 1991). The analysis of reasonableness takes into account the party's pro se status. Huertes v. Transunion, LLC, 2010 U.S. Dist. LEXIS 133036, * 7 (D.N.J. Dec. 16, 2010).

Aside from Plaintiffs' unwillingness to sign the Release over a period of time, the only case law support Defendant offers for the imposition of Rule 11 sanctions in this case is precedent finding pro se litigants subject to Rule 11 sanctions. See, e.g., Unanue Casual v. Unanue Casual, 132 F.R.D. 146, 152 (D.N.J. 1989); Huertas v. Transunion, LLC, 2010 U.S. Dist. LEXIS 133036 (D.N.J. May 6, 2010). In Unanue Causal, however, the pro se plaintiffs engaged in an overwhelming series of delay tactics, filing multiple actions in different jurisdictions, filing frivolous appeals and four motions for reconsideration, discharging counsel days before a scheduled status conference and hearing, and, when those actions and motions failed, attempting to remove the actions to federal court. 132 F.R.D. at 148-150. Plaintiffs have not engaged in conduct analogous to that of the plaintiffs in Unanue either in terms of delay tactics or frivolous filings. In Huertas, the District of New Jersey found that a pro se plaintiff's filing of a motion to reconsider a judgment pursuant to Fed. R. Civ. P. 59, while meritless, was not "so unreasonable as to be an abuse of the legal process." 2010 U.S. Dist. LEXIS 133036, at * 8. In this case, the additional fees and costs incurred by J.C. Penney were a result of Defendant's motion practice and Plaintiffs filing of an appeal to the Third Circuit of this Court's dispositive ruling, which Plaintiffs may do as of right from a final decision of a district court. This Court does not find Plaintiffs' duly filed opposition to Defendant's motion to enforce the settlement, participation in a Court-ordered hearing, and a filing of an appeal to the Third Circuit unreasonable given the nature of the rights involved

9

pertaining to the settlement of Plaintiffs' action. The Court thus denies Defendant's motion for attorneys' fees.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Plaintiffs to Sign the Release and Settlement of Claim or Forfeit the Proceeds is **GRANTED** in part and **DENIED** in part. Defendant's Motion for Attorneys' Fees is **DENIED**. An appropriate Order accompanies this Opinion.

DATED: December 28, 2011         /s/ Jose L. Linares
                                 United States District Judge

10